

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------

SHAFFER SMITH, 2424, LLC, SUPER
SAYIN' PUBLISHING, LLC, COMPOUND
TOURING, INC., COMPOUND
ENTERTAINMENT, LLC, COMPOUND
VENTURES, LLC,

                  Plaintiffs,

        -against-

KEVIN FOSTER, VERNON BROWN,
FOSTER & FIRM, INC., V. BROWN &
COMPANY, INC.

                  Defendants.

-------------------------------------------

14-Cv-5918 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

    Recording artist Shaffer Smith, known professionally as Ne-Yo, has sued his former business manager Kevin Foster and Foster's firm over Foster's allegedly gross mismanagement of Smith's affairs. Smith claims, among other things, that Foster converted Smith's funds and fraudulently induced Smith to invest in a company that went bankrupt. Foster and his firm have now moved to dismiss the state and federal fraud claims against them on the grounds that those claims are not pleaded with the particularity and specificity that federal law requires. Fed R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b)(1)-(2). The Court agrees, and the motion is granted.

## I. BACKGROUND

    Plaintiff Shaffer Smith is a recording artist and the other plaintiffs are entities related to Smith's vocation. (Third Am. Compl. ("TAC" or the "complaint") at 1.) Defendant Kevin Foster was Smith's business manager between 2005 and 2013. (TAC ¶ 1, 14, 27.) Foster was originally employed by Vernon Brown and V. Brown & Company, Inc. ("VB&C"), which represents itself as an experienced money manager for people in the music industry. (TAC ¶¶ 16-19.) After Foster terminated his employment with

VB&C, Foster established his own entity, defendant Foster & Firm, Inc. (TAC ¶ 61.)

In 2005, Foster convinced Smith to engage VB&C to manage his personal and business affairs. (TAC ¶¶ 14, 23.) The relationship, however, did not go well. According to Smith, Foster stole money from Smith's accounts, neglected to file Smith's tax returns on time, and failed to timely pay Smith's creditors, among other alleged misdeeds. (TAC ¶¶ 28-33.)

Smith also alleges that Foster committed fraud when he induced Smith to invest in a company called Imperial Health Research & Development LLC, which sold a beverage called OXYwater. (TAC ¶¶ 34-47.) According to Smith, Foster represented to him that OXYwater was a "healthier alternative" to the successful beverage Vitamin Water; that OXYwater was on the "verge of taking over Vitamin Water's market share"; and that Imperial "was in the process of 'going public.'" (TAC ¶ 34.) In reliance on these representations and others, Smith agreed to invest $1 million in Imperial in mid-2011. (TAC ¶ 35.) Smith agreed to invest an additional $1 million in October 2012 when Foster told him that Smith's investment was "doing great" and that Imperial had secured deals "to be a NASCAR car sponsor" and to make OXYwater the "official drink" of the Cleveland Cavaliers basketball team. (TAC ¶ 46.)

Smith's securities fraud claim rests largely on allegations that Foster's representations were false at the time they were made. (TAC ¶¶ 39-43, 48-49.) Smith also alleges that Foster neglected to disclose that he was Imperial's President, Chief Financial Officer, and majority shareholder and that VB&C was also an Imperial shareholder. (TAC ¶¶ 45.) Smith ultimately invested as much as $3.5 million in Imperial, which filed for bankruptcy shortly after Smith's last investment. (TAC ¶¶ 38, 46.)

Smith severed his relationship with Foster in the summer of 2013 and filed this action in July 2014. (TAC ¶ 27.) The TAC sets forth ten causes of action, including securities fraud, breach of fiduciary duties, breach of contract, negligence, conversion, and unjust enrichment. (TAC ¶¶ 65-112.) The TAC is the fourth complaint filed in this action, (Dkt. Nos. 1, 3, 24, 52), and Foster's motion to dismiss is his second such effort. (Dkt. Nos. 44, 53.)

## II.  DISCUSSION

### A.  Legal Standard

"To survive a motion to dismiss, a complaint must plead enough facts to state a claim to relief that is plausible on its face." *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citation and internal quotation marks omitted). When a complaint alleges that the defendants have committed securities fraud, the complaint must withstand the "heightened pleading requirements" of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1), and Fed. R. Civ. P. 9(b) by "stating with particularity the circumstances constituting fraud." *Id.*

In order to survive a motion to dismiss, a complaint that alleges securities fraud must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." *Id.* (internal quotation marks omitted). It must also plead with particularity facts that give rise to "a *strong* inference that the defendant acted with the . . . intent to deceive, manipulate, or defraud." *Id.* at 198 (emphasis in original) (internal quotation marks omitted).

### B.  The Third Amended Complaint fails to state a claim for securities fraud.

#### 1.  *The Third Amended Complaint fails to plead with the requisite particularity that Foster made false statements.*

To sustain a claim for securities fraud, a plaintiff must prove first, that the defendant made "a material misrepresentation or omission"; second, that the defendant acted with "scienter"; third, that there was "a connection between the misrepresentation or omission and the purchase or sale of a security"; fourth, that the plaintiff relied "upon the misrepresentation or omission"; fifth, that the plaintiff suffered "economic loss"; and sixth, that the plaintiff's damages were a foreseeable consequence of the defendant's misrepresentation or omission—also referred to as "loss causation." *Acticon AG v. China N.E. Petroleum Holdings Ltd.*, 692 F.3d 34, 37 (2d Cir. 2012); *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). Defendants challenge each element, but the TAC's failure to allege properly the first element is alone sufficient to dismiss the securities

fraud claim. To satisfy that element and survive a challenge pursuant to Fed. R. Civ. P. 9(b), the complaint must allege the specific representations or omissions that Foster made, *Acticon*, 652 F.3d at 37, and must explain with particularity "why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation and internal quotation marks omitted). This plaintiffs have failed to do.

The TAC identifies several statements Foster made to induce Smith to invest. To procure the mid-2011 investment, Foster allegedly told Smith that OXYwater "was a healthier alternative to Vitamin Water," "was on the verge of taking over Vitamin Water's market share," and "had deals in place with several school districts to replace sugar-based drinks" those districts sold. (TAC ¶ 34.) Foster also allegedly said that "prior investors had already received returns on their investments," that "Imperial was in the process of 'going public,'" and that any investment Smith would make "would go directly towards taking over Vitamin Water's share of the market." (TAC ¶ 34.) In October 2012, Foster told Smith that his prior investment was "doing great" and that Imperial had secured deals both to become a NASCAR sponsor and to make OXYwater the official drink of the Cleveland Cavaliers. (TAC ¶ 46.) Smith claims he invested an additional $1 million in Imperial and OXYwater on the basis of those statements. (TAC ¶ 46.)

However, the TAC articulates no facts that provide a basis from which to conclude that Foster's statements were false when made. This failure is fatal. Although the TAC does state that each statement was "false at the time it was made," it bases that conclusion upon unelaborated and impermissible "information and belief." (TAC ¶¶ 39-43, 48-49.) Plaintiffs cannot plead falsity solely upon "information and belief" unless the facts necessary to show falsity "are wholly within" defendants' "control," *Vigilant Ins. Co. v. C&F Brokerage Servs.*, 751 F. Supp. 436, 438 (S.D.N.Y. 1990), or "peculiarly within" defendants' "knowledge," *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Unfortunately for Smith, the Court is not persuaded that the purported facts are "wholly within" Foster or Foster & Firm's control or "peculiarly within" their knowledge. For instance, Smith fails to explain why Foster monopolizes the knowledge of OXYwater's relative health benefits. Nor

does Smith explain why only Foster knows whether NASCAR and the
Cleveland Cavaliers in fact had agreements with Imperial as of October
2012. Smith similarly fails to show why the facts needed to support his
allegations that Imperial was taking steps to go public, or whether investors
had received returns as of mid-2011, were "wholly within" defendants'
control or "peculiarly within" their knowledge when this action was filed,
15 months after Imperial's publicly filed April 2013 bankruptcy. (TAC ¶ 51.)

Nonetheless, the TAC would fail even if the facts required to
demonstrate the statements' falsity were indeed peculiarly within Foster
and Foster & Firm's control. Allegations based upon information and belief
must articulate "a statement of the facts upon which the belief is based."
*DiVittorio*, 822 F.2d at 1247. The complaint, for example, could have alleged
any steps that Smith took to "investigat[e] . . . the matter." *Vigilant*, 751 F.
Supp. at 438. But without a statement of facts articulating the basis for the
TAC's wholesale "information and belief" allegations, the TAC's bare
conclusions that Foster's claims were "false when made" do not suffice,
especially considering the multiple opportunities plaintiffs have had to
remedy the complaint's deficiencies.

The TAC identifies one final statement that need be addressed. As part
of Foster's October 2012 pitch to Smith, Foster allegedly claimed that
Smith's "prior Imperial investment was doing great." (TAC ¶ 46.) The
complaint states—again "[u]pon information and belief"—that this
statement "was "false at the time it was made." (TAC ¶ 48.) But unlike the
other statements, the TAC goes further: allegedly "[w]hat Foster omitted
from his October 2012 conversation with Smith, however, was that Imperial
was hemorrhaging money at an alarming pace and was on the verge of
filing" for bankruptcy. (TAC ¶¶ 47.) But the "hemorrhaging money"
allegation, without any additional factual support, is far too vague to satisfy
the heightened pleading requirements of Rule 9(b) and the PSLRA. *See In re
Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 243 (S.D.N.Y. 2010). Moreover,
that Imperial filed for bankruptcy in April 2013 does not sufficiently
indicate that the company—and Smith's investment—was "hemorrhaging
money" as of October 2012. *See Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d
360, 370 (S.D.N.Y. 2001).

Nor does the TAC succeed in setting forth a securities fraud claim based on any of Foster's omissions. Specifically, it alleges that Foster failed to disclose that he was President, Chief Financial Officer, and 66 percent shareholder of Imperial and that VB&C was a part-owner of Imperial. (TAC ¶¶ 44-45.) But these omissions are not actionable. Only omissions that render misleading *statements* that the defendant made are cognizable for securities fraud. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011) (citing 17 C.F.R. § 240.10b-5(b)); *Doscher v. Sobel & Co., LLC*, No. 14-cv-646, 2015 WL 774695 at *4 (S.D.N.Y. Feb. 11, 2015). And the claims regarding Foster and Brown's relationship with Imperial—while perhaps indicating a conflict of interest—simply do nothing to cast doubt on anything Foster actually said.

### 2. The TAC fails to plead the requisite scienter adequately.

The complaint's inadequacies are not limited solely to its failure to identify why Foster's statements were false when made. Independently fatal, it also fails to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). That strong inference of scienter can be established either by alleging that: (1) "defendants had the motive and opportunity to commit fraud" or (2) there exists "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198. And the inference of scienter cannot be "merely 'reasonable' or 'permissible'—it must be cogent and compelling." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). The inquiry is comparative: the inference must be "at least as compelling as any opposing inference . . . ." *Id.*

Defendants do not dispute that they had an opportunity to commit fraud, (Br. of Defs. Kevin Foster & Foster & Firm, Inc. in Supp. of Mot. to Dismiss Pursuant to R. 12(b)(6) at 14-15, Dkt. No. 54); the Court therefore focuses on defendants' alleged motives. *See ECA*, 553 F.3d at 198. First, plaintiffs say Foster's personal interests in Imperial gave him a motive to fraudulently induce Smith to invest. But the mere desire by shareholders and corporate officers to procure investors does not provide a "strong inference" of motive to commit fraud. *See id.* at 200. It is equally likely that individuals with a personal interest in Imperial—such as Foster—believed

in the company and sought investors to advance OXYwater's success. *Id. See also Russo v. Bruce*, 777 F. Supp. 2d 505, 519 (S.D.N.Y. 2011).

Second, plaintiffs argue that Foster had a motive to commit fraud because he wanted to—and did—skim the invested funds for his own individual purposes. The allegation to support this contention is that Foster invested $2.5 million of Smith's money in Imperial in mid-2011, whereas Smith had then only agreed to an investment of $1 million. (TAC ¶¶ 35, 37-38.) Such an allegation *could* be consistent with a motive to commit fraud. But because Foster had plenary authority over Smith's finances, (TAC ¶¶ 25-26), the allegation is also consistent with efforts by Foster to make a legitimate investment in a company that Foster believed would ultimately benefit his client Smith. *See Russo*, 777 F. Supp. 2d at 519. Moreover, the allegation that Foster skimmed other funds unrelated to Imperial, (TAC ¶¶ 29-33), does not suggest that he had the intent to commit securities fraud when he convinced Smith to invest.

Next, plaintiffs contend that the TAC's factual allegations provide "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 555 F.3d at 198. Specifically, plaintiffs contend that Foster's recommendation that Smith invest, in light of all of Foster's misrepresentations, is evidence of fraudulent intent. But because the TAC fails to properly allege that any of Foster's statements were false when made, the Court simply cannot accept the circular argument that Foster's motive to lie is evidenced by his lies.

Plaintiffs' final attempt to show circumstantial evidence of motive is a genus of impermissible hindsight pleading. Plaintiffs urge that Foster's efforts to have Smith invest merely six months before Imperial's demise show Foster's conscious misbehavior or recklessness. But the existence of the April 2013 bankruptcy alone does not show that Foster knew the end was nigh or should have anticipated it as of October 2012. *See, e.g., Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 361 (S.D.N.Y. 2012).

In sum, the inference that Foster acted with the requisite scienter is not the more compelling inference that can be drawn from the facts alleged.

*Russo*, 777 F. Supp. 2d at 516. Consequently, the TAC fails to allege scienter, and Smith's securities fraud claim must be dismissed.[1]

### 3. *The fraud claim is dismissed with prejudice.*

As noted previously, the TAC is plaintiffs' fourth complaint, three of which have been subject to motions to dismiss. Vernon Brown earlier moved to dismiss plaintiffs' First Amended Complaint and expressly urged that plaintiffs' securities fraud claim failed to satisfy the PSLRA and Fed. R. Civ. P. 9(b). So too did defendants' motions to dismiss the Second Amended Complaint. Plaintiffs were most certainly on notice of defendants' arguments and had a full measure of opportunities to cure the deficiencies; the Court dismisses with prejudice plaintiffs' fraud claims.

## III. CONCLUSION

Defendants' motion to dismiss is granted in full. Because the TAC fails to set forth a claim for securities fraud and common law fraud, those claims are dismissed with prejudice.

Dated:  New York, New York
        March 3, 2016

SO ORDERED:

Sidney H. Stein, U.S.D.J.

---

[1] The elements of plaintiff's common law fraud claim are "essentially the same" as those of plaintiff's securities fraud claim, *Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 414 (S.D.N.Y. 2010), and the factual allegations undergirding both claims are identical, (TAC ¶¶ 65-68; ¶¶ 98-103.) Further, plaintiffs make no attempt to distinguish their common law and securities fraud claims in their papers opposing defendants' motion to dismiss. Consequently, because the securities fraud claim fails to meet the requirements of Fed. R. Civ. P. 9(b), so, too, does its common law doppelganger. *Meridian*, 747 F. Supp. 2d at 414; *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 446 (S.D.N.Y. 2014).