UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
SHAFFER SMITH, 2424, LLC,
SUPER SAYIN' PUBLISHING, LLC,
and COMPOUND TOURING, INC.,

       Plaintiffs,                                     No. 14 CV5918 (SHS)

v.

KEVIN FOSTER, VERNON BROWN,
FOSTER & FIRM, INC., and
V. BROWN & COMPANY, INC.

       Defendants.
-----------------------------------------------------X

**PLAINTIFFS SHAFFER SMITH, 2424, LLC,
SUPER SAYIN' PUBLISHING, LLC,
AND COMPOUND TOURING, INC.'S PRE-TRIAL MEMORANDUM**

      Plaintiffs, Shaffer Smith, 2424, LLC, Super Sayin' Publishing, LLC, and Compound Touring, Inc. ("Plaintiffs"), by and through its attorneys, The Roth Law Firm, PLLC, hereby submits its Pre-Trial Memorandum of Law as follows:

**STATEMENT OF FACTS**

      Plaintiff Shaffer Smith, a recording artist and owner of multiple business entities, retained Foster & Firm, Inc. to manage his personal and business finances (which included Plaintiffs 2424, LLC, Super Sayin' Publishing, LLC, and Compound Touring, Inc.).

      As business manager, Foster & Firm was responsible for, among other things, determining Plaintiffs' earning projections, overseeing their current investments, advising them on other future investments, devising strategies for managing funds responsibly, maintaining Smith's budget to ensure he was financially situated as to maintain his accustomed lifestyle, and protecting Plaintiffs

from financial ruin by mitigating financial risk.  Notwithstanding its fiduciary duty, Foster & Firm has taken fees from Plaintiffs in excess of $3.5 million.

Foster was the sole owner and employee of Foster & Firm.  In order for Foster to gain control over Plaintiffs' finances in their role as business manager, he falsified a power of attorney.  As Smith's business manager, Foster & Firm controlled Plaintiffs' Citibank accounts through 2013.

Contrary to its duties as business manager, Foster & Firm failed to satisfy the most rudimentary accounting tasks such as failing to timely file tax returns or pay invoices incurred by Plaintiffs' – this alone led Smith and his businesses to incur substantial penalties and interest.  While such negligence was damaging, it paled in comparison to the serious misconduct that followed.

Beginning around July 2011, Foster, on behalf of Foster & Firm, began making fraudulent and unauthorized transfers to and from Smith's various bank accounts.  For example, in December 2012, $300,000 was transferred from 2424, LLC's bank account to an "Edward R. Grauer Esq. attorney trust account" despite the fact that none of the Plaintiffs authorized the payment nor had any relationship with Grauer.  Grauer, as it turns out, is General Counsel for Cash Money Records, another client of Foster & Firm. Foster misappropriated this $300,000 to benefit Cash Money Records (their other client), in breach of Foster & Firm's fiduciary duties to Smith.

The most troubling issues arise from Foster's undisclosed association with Imperial Integrative Health Research & Development and OXYwater. Besides Foster's role as owner of Foster & Firm, he also acted as Imperial's President and Chief Financial Officer, owning 66% of the shares in the company. In June and July of 2011, both by telephone and in person, Foster induced Smith to invest in Imperial. During those conversations, Foster misrepresented that

Imperial was in the process of going public, that it's product, OXYwater, was a healthier alternative to Vitamin Water, that OXYwater was on the verge of taking over Vitamin Water's market share, and had deals in place with several school districts to replace sugar-based drinks. Foster advised Smith that the time to invest was "now" and, importantly, that prior investors in Imperial had already received returns on their investment. In addition, Foster represented that all investment proceeds would go directly towards taking over Vitamin Water's market share. While Foster was misrepresenting the how the investment proceeds would be used and the purported success of OXYwater and its current investors (who had not actually received any returns on their investment), Foster intentionally failed to inform Smith of the fact that Foster had direct financial interests in Imperial and, most importantly, that his representations of fact were simply not true. In fact, unbeknownst to Smith, investment proceeds went to Defendants and/or Imperial's other officer's, who have already been found guilty of criminal acts related to misuse of investor proceeds. Additionally, Smith was never provided any financial documents or risk disclosure statements relating to the investment. In reliance on Foster's misrepresentations, Smith agreed to invest $1,000,000 in Imperial.

Regardless of Smith's wishes, Foster instead transferred $2,500,000 to Imperial from a 2424, LLC bank account. Further, as Foster concedes by taking the Fifth Amendment against Self Incrimination, none of that investment was attributable to Mr. Smith but was converted.

In October 2012, Foster, in an attempt to induce Smith to invest more money, contacted Smith and misrepresented that Imperial had secured a deal to be a NASCAR car sponsor and had executed an exclusivity contract to be the official drink of the National Basketball Association's Cleveland Cavaliers. Based on these misrepresentations, Smith agreed to invest another $1,000,000. Contrary to his fiduciary duties as business manager, however, Foster intentionally

failed to inform Smith that Imperial was hemorrhaging money at an alarming pace and was on the verge of filing for protection under Chapter 11 of the United States Bankruptcy Code -- nor did Smith correct his prior misrepresentations to Smith. And, as Foster concedes by refusing to answer questions, those monies were not even credited Mr. Smith. Despite Plaintiffs' $1,000,000 investment attained by Foster, Imperial filed for protection under Chapter 11 on April 5, 2015 and listed V. Brown & Company, Kevin Foster, Foster & Firm, 2424, LLC, and Super Sayin' Publishing, LLC as Equity Security Holders.

Plaintiffs have been injured in an amount in excess of $3,500,000.

In an effort to cover its tracks, Foster forged Smith's name on a series of promissory notes and related documents in order to replace the mishandled monies. That is, beginning February 21, 2013 – two months after the wrongful $300,000 Grauer transfer – Foster, without Plaintiff's consent or knowledge, forged Smith's name on a $400,000 promissory note between Compound Touring and Citibank with Smith, 2424, LLC, and Super Sayin' Publishing, LLC listed as guarantors. Foster also once again forged Smith's name on a promissory note with Citibank in the amount of $1,000,000, supposedly on behalf of Super Sayin' Publishing, LLC and secured by 2424, LLC. This note was secured to replace the $1,500,000 that Foster & Firm caused to be transferred out of 2424, LLC in the July 8, 2011 Imperial investment. Because Foster executed these documents without Smith's knowledge or consent and as a result of a purported default thereunder, both notes have now resulted in Plaintiffs being named as defendants in a related litigation against Citbank.

# ARGUMENT

## I. FOSTER & FIRM, INC. IS LIABLE FOR BREACH OF FIDUCIARY DUTY

The elements of a claim for breach of fiduciary duty under New York law are "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *SCS Commc'ns., Inc. v. Herrick Co.,* 360 F.3d 329, 342 (2d Cir.2004). Generally, no fiduciary duties arise where parties deal at arm's length in conventional business transactions. *In re Mid–Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir.2002). However, a fiduciary relationship will arise where the parties to a contract specifically agree to such a relationship, or if "one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." *Ross v. FSG PrivatAir, Inc.,* No. 03 Civ. 7292, 2004 WL 1837366, at 5 (S.D.N.Y. Aug. 17, 2004) (quoting *Calvin Klein Trademark Trust v. Wachner,* 123 F.Supp.2d 731, 733–34 (S.D.N.Y.2000)). The plaintiff must demonstrate that the defendant was "under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595, 599 (2d Cir.1991) (quoting *Mandelblatt v. Devon Stores, Inc.,* 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (1st Dep't 1987)).

As will be set forth at trial, Foster & Firm had a fiduciary duty to Plaintiffs and breached that duty. Counsel for Foster has confirmed that it will not be contesting liability.

## II. FOSTER & FIRM, INC. IS LIABLE FOR BREACH OF CONTRACT

To establish breach of contract under New York law, a plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the [Plaintiff], (3) breach of contract by the [Defendant], and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 177 (2d Cir.2004).

As set forth above, Foster & Firm's counsel has indicated that it will not contest liability.

### III.   FOSTER & FIRM, INC. IS LIABLE FOR NEGLIGENCE

The elements of a negligence claim under New York law are: "(1) a duty owed to the plaintiff by the defendant; (2) breach of that duty; and (3) injury substantially caused by that breach." *Lombard v. Booz—Allen & Hamilton, Inc.,* 280 F.3d 209, 215 (2d Cir.2002) (citing *Merino v. N.Y.C. Transit Auth.,* 218 A.D.2d 451, 639 N.Y.S.2d 784, 787 (1996)).

Defendant is not contesting liability.

### IV.   FOSTER & FIRM, INC. IS LIABLE FOR CONVERSION

In New York, in order to maintain a claim for conversion, a plaintiff must show: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Moses v. Martin,* 360 F.Supp.2d 533, 541 (S.D.N.Y.2004), *Neely v. Residential Mortg. Sol., LLC*, No. 12-CV-1523 JS AKT, 2015 WL 6438772, at 4 (E.D.N.Y. Oct. 20, 2015).

Defendants are not contesting liability.

### V.   FOSTER & FIRM, INC. IS LIABLE FOR UNJUST ENRICHMENT

The elements of a cause of action to recover for unjust enrichment are "(1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" *Mobarak v. Mowad*, 117 A.D.3d 998, 1001, 986 N.Y.S.2d 539, 542 (2014).

"The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *GFRE, Inc. v. U.S. Bank, N.A.*, 130 A.D.3d 569, 570, 13 N.Y.S.3d 452, 454 (N.Y.

App. Div. 2015); *see Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 419, 285 N.E.2d 695, 696 (1972).

Defendants are not contesting liability.

## VI. THE FINDER OF FACT SHOULD DRAW AN ADVERSE INFERENCE AGAINST FOSTER & FIRM

It is well accepted that when a party to a civil action asserts his or her Fifth Amendment privilege against self-incrimination and refuses to testify, the court should direct the jury to draw an adverse inference against that party." *Andrew Carothers, M.D., P.C. v. Ins. Companies Represented by Bruno, Gerbino & Soriano, LLP*, 26 Misc. 3d 448, 461–62, 888 N.Y.S.2d 372, 382–83 (Civ. Ct. 2009).

Courts in this circuit have consistently held that an adverse inference will be drawn against those who plead the Fifth Amendment against self-incrimination in a civil matter for all unanswered questions. *N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 419 (S.D.N.Y. 2009). And where the witness even takes the Fifth Amendment by not answering questions in a related case, the negative inference will still be drawn. *S.E.C. v. McGinn, Smith & Co., Inc.,* 752 F.Supp.2d 194, 209 (2010) (testimony of the defendant from a related case with similar facts entitled the jury to draw an adverse inference to the extent the questions to which the defendant asserted the privilege were not answered during his prior testimony); *Amador v. Andrews* 2010 WL 2365855, at 2 (S.D.N.Y. June 10, 2010); *Willingham v. Cty. of Albany*, 593 F. Supp. 2d 446, 452 (N.D.N.Y. 2006) ( "plaintiffs [were] entitled to adverse inferences from [Defendant's] invocation of his Fifth Amendment privilege to the extent that the questions to which he asserted the privilege were not otherwise answered during his testimony in the [previous] hearing").

Foster, in responding to questions during discovery in this matter and in the related matter, *Citibank, N.A. v. Smith,* uniformly took the Fifth Amendment against self-incrimination with regard to every substantive question asked by counsel for Smith and Citibank. Specifically, he refused to answer questions regarding his use of Smith's bank accounts, investments in Imperial Health and generally with regard to every question asked about his relationship with not only Smith, but Citibank, Belton (the Citibank employee), V. Brown and everyone else. In light of that testimony, this Court should direct the jury to draw an adverse inference against Foster & Firm.

## VII.   DAMAGES INCURRED BY PLAINTIFF

Plaintiffs damages, as a result of Defendant's misconduct, are as follows:

- $2.5 million July 2011 OXY investment
- $1 million October 2012 OXY investment (wired to Foster directly)
- $400,000 advance on loan Foster transferred to himself
- $1,000,000 advance on loan Foster transferred to himself
- $62,500 check Foster wrote to himself without Smith's knowledge
- $6,104.06 check Foster wrote to himself and was asked about

Accordingly, at trial Plaintiffs will see $4,968,604.06 in damages.

**CONCLUSION**

For the reasons stated herein, the Smith Defendants' will seek damages for each of Foster & Firm's breaches and malfeasance as set forth herein and will ask the finder of fact to find for Plaintiffs for the entire amount and ask that all such relief be granted, together with any further relief that the Court deems just and proper.

Dated: New York, New York
February 13, 2017

THE ROTH LAW FIRM, PLLC

By:   */s/ Richard A. Roth*
Richard A. Roth
Jordan M. Kam
295 Madison Avenue, 22nd Fl.
New York, New York 10017
Tel:  212-542-8882
Fax:  212-542-8883
*Attorneys for Plaintiffs*